Her argument next in number 2011-1485, ARCTIC SLOPE NATIVE ASSOCIATION against the Department of Health and Human Services. ARCTIC SLOPE NATIVE ASSOCIATION against the Department of Health and Human Services. Materials. Okay, Mr. Miller, before we start, and I have a question that doesn't have a direct pertinence to the issue that's before the court, and I didn't want to use up your time with a somewhat collateral matter. But I was curious whether you can tell us whether or the extent to which the case that's now pending before the Supreme Court, Salazar against Rama, affects the merits of the claim that's before us today. I understand that we have the procedural question, but the underlying merits, what is the relationship between that issue and this case? The relationship is this. This case involves contracts for fiscal years 96, 97, 98. Right. Now the ARCTIC SLOPE case, what we call ARCTIC SLOPE 2 that already went through this court and is up on appeal awaiting action on a cert petition involves 99 and 2000. Right. And those are what we call cap years. So the case we've got here is not, does not involve cap years? Almost correct, Your Honor. 96 and 97 doesn't involve cap years, and the parties disagree on 98. Okay. That's so. So it could be that the Supreme Court's decision in Rama, which would affect ARCTIC SLOPE, would then affect 98 contract year, but not 97 and 96. But it's clear it would not move this case. Correct. Okay. That's fine. Okay. We can begin with your argument. Thank you. May it please the Court. This is, as our colloquy just noted, the last chapter of the early phase of the Cherokee cases. The so-called Cherokee cases that were considered by this Court and affirmed by the Supreme Court involving Indian Health Service underpayments in the mid and late 1990s. Starting in 98, 99, it's a different legal regime. But 97 and 96, which are two of the three years at issue here, we're at the end of the chapter of the Cherokee cases. We submit that the time was told for ASNA to present its claims under very unique circumstances. Two. First one being that the government had notice, timely notice, in 2001 of these claims, and actually filed in the court below a complete contract record of all of the contract documents and all of the payment documents upon which the outcome of this case on the merits will depend. And the second unique factor, extremely unique, is that Judge Hanson, in managing one of the two cases in which Artic Slope was involved, the Raymond case, Judge Hanson made no fewer than five decisions over a 12-year period either expressly stating that presentment was not required or applying the rule that presentment was not required. And those are a decision in 1993 which said presentment is not required in connection with the rate claims, which are also asserted. Was there ever any ruling that any party that made a presentment would be disqualified as a member of the class? No, Your Honor. There was never that kind of a rule. Was there ever an argument asserted by the government to that extent or a belief on behalf of your client that that was the case? Yes, at 484-434 where the declaration appears of Mr. Hobson, Mr. Hobson believed that by proceeding individually he would have been taking himself out of the class. And I can understand that because once you file individually, you get a denial. I mean every claim, the court should know that every claim, there were 70 claims filed over the course of time against the Indian Health Service. The Indian Health Service denied every claim. Presentment was indeed futile. Putting that aside, every claim would have been denied. Then Artic Slope would have been required to appeal within six months to the CBCA. Were they denied on the merits or were they denied because there was a federal action pending? They were denied on the merits, Your Honor. They were denied because the Indian Health Service took the legal proposition that appropriations were unavailable to pay anymore under the contract. That issue was decided in Cherokee, except that's in 1998. As I noted earlier, that will be decided in Raymond and Artic Slope. So those claims would have been denied, and Artic Slope then would have to appeal. Now Your Honor did say in Artic Slope 1 that presumably the time to appeal would be told, and so a person could be in the class. That's the first time there's ever been a suggestion that that timing of review provision is subject to equitable tolling. Your Honor is far more familiar than I about this Court's rich body of case law concerning timing of review provisions and whether they are or they aren't subject to equitable tolling. But nobody knew in 2001, 2002, 2003 that the time to appeal a denial of a CDA claim would be told – not told, excuse me, but covered by a class action and told by class action tolling. To be clear, I understand the argument you're making now, but to follow up on Judge Reyna's question, Judge Steele says in her dissent that the government, as Miss President, relied upon a representation by the government about this issue. The requirement that, excuse me, the suggestion that if there were a presentment that it would disqualify the tribe from participation in the class action. Now I looked at the footnote that's quoted at 8a and 9a, and I didn't see that as being a representation of that sort. Has the government ever made that argument? I don't disagree with Your Honor, but the Hobson Declaration says much more. The Hobson Declaration says in spades that Mr. Hobson and Artic Slope and the board relied on five decisions from Judge Hanson, and they were the 1993 decisions. Okay, but I don't want to cut you off. Well, actually, I am cutting you off, but let me make sure I understand. So Judge Steele is wrong in saying that the government, as opposed to Judge Hanson or the tribe's own understanding of what the rule might be, she was wrong in saying the government led the tribe to believe this. Is that right? We can all read what the government said in that filing. The majority viewed it one way. Judge Collier in the Menominee case viewed it one way. Judge Steele viewed it a different way. I guess what's important here is what did Artic Slope believe, and we have that from their declaration. They believed that individual action would opt them out. But is a belief without a foundation enough? I mean, can we say that's reasonable? Well, as Your Honor knows from our briefing, we are not putting our case on that action. We are placing our case on Judge Hanson's ruling and the overwhelming body of law that was developed over 12 years by Judge Hanson, who was managing the Zuni case in which Artic Slope thought it was. He was managing the Rema case in which Artic Slope was. Artic Slope had recovered twice in settlement. In 1993, twice in 1999, twice in 2002, Judge Hanson had shown that presentment was not available. He said it wasn't available. He applied his ruling when the rate claim was settled in 1999. He made no exception or provision for presentment when he added the shortfall claim, which was also in the Zuni case in 1999. He added the direct contract support cost claim in 2002, made no provision for presentment. That claim was also in the Zuni case. And then he settled and approved a class settlement, which we know under Ampson v. Windsor, the Supreme Court's 97 decision, that meant that he understood this to be a solid class. He couldn't settle a class act without it being a solid class under Rule 23. All of these things he did, and Asda not just knew about them. Asda was a party in the case. That was the law of the case. In preparing for the argument, what struck me, Your Honor, is that there's a real sense in which we're talking about the rule of law. You have a litigant in a court with a judge saying over more than a decade, this is the law, and I am carrying out the law this way. Assuming that's a reasonable reliance, you have a ruling by a federal judge that says this is the law of the case, and assuming that that's reasonable. However, during the course of the litigation, let's say tea leaves, if anything, were being expressed, that there may be a problem with that prior ruling. Yet, Ardick Sloat did nothing at that point to preserve its standing before the contract board. Because there was no indication that Judge Hanson was going to change his law. The cases, they're not legion, but there are cases out there in which litigants rely on the law of the circuit, which may be in conflict with the law of another circuit. And then they get stung by a reversal of the law of the circuit in the Supreme Court, and the courts, every time, have accorded equitable tolling. Because it was reasonable for the litigant to rely on the law of the circuit. The litigant's reasonable diligence doesn't require a litigant to suppose that the judge before whom he's appearing is wrong. And therefore, I need to take every possible action I would take had the judge ruled in a different way. Do you attribute any significance to the statutory change that imposed a time limitation on presentment? No, Your Honor. That's because it deals with the time to present, not the fact that presentment. I mean, it's a part of the requirement of presentment to the contracting officer. No, I appreciate that the board below, the board majority, did find that the addition of a statute of limitations made a difference. But it doesn't make a difference. If presentment is not required, it's not required whether there's a six-year rule or there's just a general latches provision. And that, incidentally, was what was going on in the Cherokee case. The government points out that the judge in Cherokee talked about statute of limitations. I wonder, though, if that does have some bearing. If you have the addition of a statute of limitations during the course of the litigation, doesn't that begin to erode at the reasonableness of the reliance? I mean, wouldn't counsel at that point say, well, maybe we better take a step back and preserve our rights in this case in case something does happen? Well, let's see what happens. The statute of limitations was added by an act of Congress in, I believe, 1994. It applied to contract signed before October 1, 1995. And in 1999, Judge Hanson is approving class settlements. In 2002, Judge Hanson is approving class settlements. Judge Hanson is continuing to handle the case on a class basis through the case that is now up on the Supreme Court. He did the – well, he don't cite it to Your Honor. It didn't produce a public decision. But there was a PSA 3, a partial settlement agreement 3, which awarded equitable relief to the class in terms of the rate-making issues. That's permanent. All of this without regard to the statute of limitations. It just means that there's a big difference when you have a situation dealing with exhaustion of administrative remedies. Say that you tell a litigant, well, there's an administrative process below that you have to go and complete before you come to the court. There's a difference between that and an actual statute of limitations. That's clear in its face. You have a period by which to file a claim from the point that the claim accrues or you lose your right to that claim. How should we view those two differences? Because the ruling, Judge Hanson's ruling merely speaks to administrative – exhaustion of administrative remedies. It doesn't say anything about the statute of limitations. Correct. Judge Hanson relieved the absent class members of any duty to present regardless of the statute of limitations or not. It didn't matter. It wasn't what he was talking about. He was talking about the futility of presenting. It was futile in Rameh to present the rape claim. It was futile, and it didn't matter during what time frame. It was futile in Rameh to exhaust. It was futile in Zuni to exhaust on the rape claim. It was futile in both to exhaust on the shortfall claim because the government was taking this appropriations defense position that had to be litigated here in the Supreme Court. So if you're Artic Slope and you're experiencing what's going on in Judge Hanson's courtroom, you're thinking Judge Hanson is going to do the exact same thing in the Zuni case that he did in the Rameh case. And Judge Hanson is managing the Zuni case. He puts the case on hold for what he thinks no doubt will be a couple of years. It ended up being four years. But if you're diligently pursuing your case, then isn't it reasonable for counsel to say to their client, look, I think maybe we better go file a presentment. It's not going to hurt us. If Artic Slope had gone to a lawyer and said, I think we better present, the lawyer would have told him, well, if you present, you're going to effectively take yourself out of the class. But why would they say that? Wait, here's why. Because you're going to get a denial. You know you're going to get a denial. And you're going to have to appeal that denial to the Court of Federal Claims or the Civilian Board of Contract Appeals or a district court under the Self-Determination Act as a third option. You're going to have to appeal that. Once you're appealing that, you're on your own. You cannot be in the class. So here's Judge Hanson saying, these are good classes. I'm going to manage these carefully. I'm going to take care of them. This is a manageable class action under Rule 23. And then you're appealing off through the presentment into individual action. Now, Rama had presented, correct? The class representative. The class representative had presented. Yes. Are you saying that during the litigation that there was a concurrent administrative process going where the class representative was pursuing their administrative claim? Or was that stayed pending the… No, no. The class representatives, all three of them. There were three. Rama, Oglala in 1999 added, and Zuni in 2002 added, 2001 added. All three of them presented their claims, received denials or deemed denials, and went to district court. So they finished the administrative process. The class representatives always finish the administrative process. Okay. But you're saying that that's fine for the class representatives since they're instituting the lawsuit. But anyone who wants to participate as a class member would be prejudiced to the extent of being excluded from the class by virtue of going through the presentment slash appeal process. Correct, Your Honor. It would not have just prejudiced them. It would have taken them out of the class. It would have taken them out of the class. But what – do you have any authority for that proposition? I mean, other than the assertion that once you're in the, say, the court of federal claims, that you are necessarily outside the scope of the class. In other words, could somebody go say that in order to establish the presentment, satisfy the presentment requirement, I had to do this? In order to avoid problems with statute of limitations, I had to file a pleading here, an appeal here. But I would like you to say this proceeding because the case is going to go forward as a class action, and I choose to be a class member. What's wrong with that way of proceeding? Taking the administrative process, taking the appeal, and then asking the tribunal that's hearing the appeal to say it. I suppose that's discretionary with either the board that's hearing it or the court of federal claims that's hearing it whether to do that or not. But you say they may not. But they may not. And, in fact, I've had experience – my colleagues have had experience where the court of federal claims has said no. In fact, the board has recently said no. We're moving forward on these claims, and they're not interested in staying. There's no legal basis on which to believe that presenting during the course of the litigation would have taken you out of the – standing from the class. Do you have such authority? That presenting would have taken – no, as a practical matter, presentment would have taken the party out of the class. And not until this court's decision, Your Honor, in 2009, in the Arctic Slope I case, was there ever a whiff of a suggestion that if you present and you get a denial and you've got an appeal period, don't worry. You don't have to take an appeal. You're inside a class, and we're saying Rule 23 applies to that timing of review provision. None of us knew that. And the key for equitable tolling, which is a flexible doctrine that's supposed to be case-specific in extremely unique circumstances, is what would Arctic Slope have thought sitting there in 2002, 2003, and 2004 when the time has passed? And Judge Hanson is repeatedly managing this class without presentment and paying out funds without presentment. I think it is critical to assess what was going on with Arctic Slope. We know that Arctic Slope made a mistake. I mean, this court has ruled that presentment was jurisdictional. This court disagrees with Judge Hanson. This court believes that even if it's incorrectly so, I mean, that's the law of the circuit, that a futile presentment is nonetheless a presentment that must be made. So be it. But all of these events happened a decade later. At that time, there was no way for Arctic Slope to know. To what extent should we consider the other factors, the trust relationship between the government and the tribes, whether there was prejudice to the government, whether the government had notice? How important are those considerations? Well, we believe they are important, Your Honor, and that they do help tip the balance. This court, of course, has been always very solicitous of veterans and social security beneficiaries. Some of that is a matter of common law. Some of that is a matter of statutory law. But Congress made clear in the Self-Determination Act, it reiterated that there is a trust responsibility. It expanded contractor rights for the tribes beyond those of ordinary government contractors. They're not bound by the Federal Acquisition Regulation. If they get a denial of a claim, they can go to a local U.S. district court. They don't have to come here to Washington, D.C. Congress was very solicitous. And I don't think it changes what the rules are with regard to statutory tolling and what the rules of the road are inside the Contract Dispute Act. But I do think it goes to the balance that the court should strike when it applies equitable tolling. Okay. You've gone over your time, but we will restore... Well, we've used... We asked you quite a few questions, so we'll restore you for a full three minutes. Thank you for your time. Mr. Shum. May it please the Court. There is a dispositive fact here that is undisputed and, again, dispositive of the appellant's claims, and that is this, that the appellant simply elected to do nothing. That is that it took a risk and it took a chance and it hoped. Are you arguing or do you argue that the reliance of the tribes on Judge Hansen's ruling was not reasonable? It was far from reasonable. The Court doesn't actually need to get there, but I'll come back to that point. But, yes, Your Honor, to address that directly, it was far from reasonable. What do you mean far from reasonable? Was it reasonable or not? Not at all, Your Honor. It wasn't. So if a federal judge issues a ruling in the context of a case, you're saying that the parties are free to disregard it? A party is not willing in a district court proceeding to rely on that being the law for every other case with different facts and different law and different issues and different claims raised, which is what happened here, Your Honor. In 1993, this class certification order dealt with one type of claim, and that was a calculation claim. What that meant is that, effectively, the way that Interior was calculating these rates, a different number should be in the denominator. That's the class certification order. The judge there recognized that no other court had ever found presentment to be futile, but it was going to because of the nature of that claim. That's 1993. In 1999, these types of similar claims were added, similar claims to those asserted here. It went beyond the denominator, but, again, it's still a different defendant, still different types of contracts, but they were added. The orders allowing those amendments, Your Honor, and this is important, the docket entries are 347 and 384. Those were stipulated orders that expressly preserved the government's defense. There was no certification order as to those claims. What happened is that the government preserved its defense as they were litigated as class claims, but there was no written, published decision saying, you know, these really are suitable class claims. Instead, the judge found the opposite. In 2002, when approving PSA number two, the judge expressly found that decertification of the shortfall claims is a possibility. It is far from reasonable. It is unreasonable. At that point, had the statute of limitations run? 12-2, I don't believe so, Your Honor. My math is not great. I don't believe so, Your Honor. Okay, assuming that they had run, and what you're arguing is that perhaps at that point that Artic Sloan should have presented. But let's, if these statute of limitations had run, wouldn't it have been futile for them at that point to present? The statute, well, there'd be no jurisdiction to consider the claim had the statute run. It'd be futile for them to present. Right, and I think futile has a special meaning in this context, Your Honor. To the extent, to answer the court's question, could they have prevailed? Well, no, because there'd be no jurisdiction to hear the claim. But I think futile has a slightly different legal term of art there. But could they have recovered by presenting the claim after the statute of limitations period? No, but that's not the only reason what happened here was, again, far from reasonable. In Cherokee, this was the same action. What happened is that a different tribe thought it would try a different district court judge. It tried a different forum. A different district court judge said, no, this class can't be certified. This is a contract action. You don't litigate contracts as a class action, and that's what the Cherokee court… In Cherokee, they were arguing specific contract actions and contract clauses, but in the other cases, were they not arguing a countrywide policy as to whether these support payments would or would not be made? Cherokee… It's a little bit difficult to me because, again, the nature of the action changed during the RAMA from various times. Cherokee's idea that you're entitled to your entire contract support cost funding, regardless of what your contract says, or based in no cap matters, that argument is the same argument that's been carried through after 2002 in RAMA and here. So it's all the same, but the point was the district court said, no, you can't certify the class. That's 2001, and this is why Arctic Slope can't rely upon Cherokee because it didn't do anything for four and a half years. It's claiming diligence and reasonable diligence, and four and a half years after a district court judge says, no, I'm not going to certify a class in Cherokee, it did nothing. Mr. Sheff, what do you say about Mr. Miller's argument that had they made their presentment, they would have at least – it's reasonable to suppose at that point that they would have had an obligation to proceed with appeals within the short time limits for appealing after presentment or denial, and that they would have been effectively excluded from the class? It's something that we didn't address until much later. Yeah, and it's also not raised in the briefs, Your Honor, so I'm a bit hesitant. Okay, go ahead. I mean, certainly it was aligned with Mr. Hoffman's affidavit to this effect, but that argument was also kind of – relying upon Cherokee, for example, was waived by not raising it here, although raised at the board, and the same is true for this argument, this idea that they didn't do it because they were afraid they wouldn't be able to be part of the class. It's an interesting idea. It's not raised in the briefs, but it is speculative, Your Honor. I mean, is it possible? To be frank, I don't know, Your Honor, because it wasn't raised, but that doesn't make Congress's jurisdictional requirements irrelevant or unnecessary. Congress requires presentment, and if that means, for example, you may have a fear that you may not be able to partake in a class, I don't think the fear is justified. Well, but what it does, I suppose, if it's correct, what it does is to significantly undercut the argument that there was absolutely no cost associated with other than the ministerial cost of putting together a two-page letter. There was no cost associated with doing the presentment. I mean, in terms of balancing the equities, if there is no burden on the party to do something which is legally required, then that party is going to have a harder time coming in and saying that I was faced with a terrible dilemma. If there is a cost, such as not being able to participate in the class, well, maybe the balance is different. Would you agree? Well, yes, could the balance be different? Yes, but that doesn't mean you can't do it, Your Honor, and that's the point. I mean, the question is, did you have the ability to file your claim and to comply with the Congress' mandate? Yes. Did you do so? No. And if you asked Arctic Slope at the time, are you complying with the presentment requirement? This is what differentiates this case from all of these equitable tolling cases. Did you comply with statutory requirements? No, we didn't. We're hoping that in a future court decision, a district court judge is going to find that we didn't have to do it. That's not equitable tolling. The idea that something in the future is going to perfect your claim presentment requirement, that's taking a chance. That doesn't entitle to your equitable tolling. And this goes back to the first question that I asked you, and I'm still not satisfied that you've answered my question. Was Arctic Slope's reliance on Judge Hanson's ruling that a party need not present in order to be a class member, was that reliance reasonable? No. Several reasons. First of all, the 1993 certification order dealt with a different claim than what's raised here. It was strictly what number goes in the denominator of the rate. Two, it was against a different defendant. It was brought against Interior instead of HHS. The contracts are different. Three, does that matter? The different defendants? It does, Your Honor. This is pointed out in the Supreme Court filings perhaps best. Interior and HHS use different types of contracts. So even if it were possible that... But it was the same policy that was being applied to those contracts. That was the Interior policy being challenged with the denominator stuff. Some of that didn't, my understanding, apply both ways. But again, different defendants, different types of contracts, another reason it's not reasonable. The question was not whether these support costs were going to be paid or not. And the government's policy was, no, we don't have to pay those. That's not right, Your Honor. The question in 93 is what numbers go in the denominator and the numerator for figuring out a rate. That's all that was raised in 93. What got added later in 99 and 2000 were these claims that are more similar to the claims here, which is that regardless of how you calculate the rate, regardless of whether there's a cap, are we getting our full amount paid? And that's a different idea than what number goes in the denominator. So that's number one and two. Number three, because the amendments allowing the addition of these additional claims, the orders allowing those, preserved the government's defenses. If the government preserved the ability to raise those defenses there, it certainly did in future decisions. Number four, the Cherokee decision. Remarkably absent here from Arthur's false argument is the fact that a different district court judge decided the issue directly the opposite. And at that point, Your Honor, they had to come do something. It's not diligent to just hope and then go back to the other judge and hope that judge is going to do the same thing again, particularly given, number five, the law change. The six-year presentment requirement does, in fact, matter. It changes the landscape. What do you, changing gears slightly here, what do you say to the statement by Chief Justice Rehnquist and Irwin in footnote three citing American pipe as among the types of equitable tolling that have been recognized and specifically talking about timely filing of a class complaint protecting the class, putative class members? What I say to that, Your Honor, is that there's one type of tolling under American pipe, and that is American pipe tolling. Now, this court has called American pipe tolling illegal. That's true. But at the time that the, those decisions are post-Irwin. At the time Irwin was written, it seems to be what this footnote reflects, which is there was a concept that tolling could include class-action tolling, for example. Equitable tolling could include class-action tolling. Otherwise, it's a little hard to understand the footnote. Would you agree? Yes. But that doesn't mean— So what does the footnote mean?  Or that class members get treated differently under American pipe, which is what the appellant wants it to mean. What the court found in American pipe, Your Honor, there's just one sentence that's very important, especially in American pipe. What the court found in American pipe is that—this is page 551. First it talks about the class members who knew about what was happening in the class-action proceeding. Then the court says, We think no different standard should apply to those members of the class who did not rely upon the class proceedings. They should be able to intervene as well. Okay. The appellant's claim here is the exact opposite. If you look on page 40 of their response brief, what they want is they want a different standard to apply. They're not relying—no case supports them, but what they want is they want to say, Well, we're a different type of class member. We knew what was happening. Mr. Hobson made the decision not to go forward. And because we relied upon the class-action proceedings, this court needs to split up the class. Those who relied are treated differently than those who didn't rely. American pipe said the opposite. We think no different standard should apply. Now, the court's question in terms of this footnote, Are there two types of tolling under American pipe? No. There's American pipe tolling. It's referenced in a footnote. This court goes on to call it legal tolling. The Supreme Court about a month ago issued its Credit Suisse decision. In footnote 6 of that decision, the Supreme Court makes reference to the fact that some federal courts have referred to American pipe tolling as being statutory or legal tolling. But importantly, nowhere is American pipe treated as two different objects. There is American pipe tolling. This court's called it legal tolling, but the rule of American pipe still applies, which is that class members get treated the same. So in order to answer the court's question, there's one type of tolling. This court's referred to it as legal. We don't challenge that. Well, but the problem, it seems to me, that this footnote creates for you is that you have – I think it's fair to say a theme to your argument, which is if the party wants to take advantage of equitable tolling in the category of cases in which one files in the wrong court, that sort of case, it's not enough to do nothing. They have to do something, and you've reiterated that here. The problem with that argument is it runs into the notion coming out of American pipe that somebody who does, in fact, nothing, may be the beneficiary of equitable tolling, and that's a possible takeaway from that footnote, and what I want to know is why isn't that a correct takeaway from that footnote. That is to say, to put it more perhaps more precisely, that the footnote suggests that someone who does nothing is not necessarily excluded from the benefits of equitable tolling. Well, what the footnote does, Your Honor, it doesn't expand upon the holding of American pipe. So what the Supreme Court says in a footnote was here are types of equitable tolling. Here's the American pipe decision. It references American pipe, but it doesn't make American pipe any bigger than it is. American pipe doesn't apply to Arctic slope, and this court already found that, and the reasoning of American pipe directly contradicts the position here. So again, the reference in a footnote doesn't make the holding bigger in American pipe. All that it says is that it's referencing types of tolling. Again, it references American pipe, and there are equitable considerations as part of American pipe, but it doesn't enlarge upon the decision. Okay, so this case is an equitable tolling matter case. What would you say is a test that we need to apply? The Supreme Court's test in pace, of course, is this. The Supreme Court test? In core, which is this. Are there extraordinary circumstances preventing you from timely filing, and did you pursue your rights diligently? Neither of those things is present here. This tribe simply hoped and elected to do nothing, hoping that this future decision would come out differently than Cherokee and that present it would become unnecessary. Thank you, Your Honor. Okay. Thank you, Mr. Shaw. Mr. Miller, three minutes. Thank you, Your Honor. If American pipe were the only rule applicable to class actions, you would never have equitable tolling in a class action arising out of a class action because, per se, in a class action, you have absent class members who are not acting. But in the instances where class actions have led to equitable tolling, land grantors in the Court of Federal Claims, Hatfield v. Halifax in the Ninth Circuit, the courts have found that no equitable tolling can apply in the context of a class action. So we can't so easily dismiss that footnote as sloppy writing by the court, and really there's only one kind of tolling that ever applies when you're inside a class action framework. There are two kinds, and the second kind is when there's actual reliance. And if there were only actual reliance, I should say this, if there were only actual reliance by the class member on what turned out to be a defective class complaint, Your Honors, no, there were 14 paragraphs asserting class allegations in the complaint. Judge Johnson denied class certification. It was a defective class complaint. Got it. And if there were only reliance on that, much tougher case. And I'm not sure Erwin stands for the proposition that mere reliance on a failed class is enough. But we have so much more. We have 12 years of action by the same judge on the same case. And I should pause for a second about this business about they're totally different cases. I've spent too many decades of my own working on Self-Determination Act issues. These are sister agencies carrying out the act in precisely the same way. They both take the indirect cost rates that are issued by the government cognizant agency and apply it to the calculation of their own indirect contract support cost responsibilities. They do it the exact same way, the same business about the denominator that my friend mentioned earlier. They both do it. That's the rate claim. It's asserted in both cases. That's where presentment was decided. It's in both cases. Also, both agencies took the position in the lump sum years, the BIA until 1994 through 1994, up until 1994, and the Indian Health Service until 98 or 99 that's disputed. They both took the position that once a Senate or a House committee says how much can be spent on those contracts, that's it. No more money can be paid no matter how the contracts have been underpaid. So that's a categorical position, a proposition of law. These cases are identical. The only difference, in fact, the Indian Health Service used to be a part of the Bureau of Indian Affairs, and they were peeled off in the 1950s to HHS, but otherwise there's no difference. It's the same law, the same class. Almost every tribe that contracts with IHS contracts with the BIA. Okay. Real quickly, now I know that you argued this below, and I see a reference to this in your briefing, but have you abandoned the inaction, reasonable inaction argument that the failure to present does not disqualify, or that you had a reasonable belief that presenting would have disqualified you from the class? The reasonable belief based on the statement made by counsel in the Cherokee case, we are not pursuing that on appeal. That's correct. Judge Steele did mention that, and the two judges in Judge Collier rejected that. And I would be remiss if I didn't point out again that equitable tolling has two sides of the balance. One is what was going on with the plaintiff, and the other is what's going on with the defendant. Now the only thing that came up in an opposition brief, never decided below, there is no proof, there's nothing in the record on this, is the government says, you know, we're not sure where that $2.3 million claim number came from in the claim for 1996. They don't dispute 97, 98. It came from the government's records. That's on page 280 of the joint appendix. The government lists how much it underpaid Artic Slope in 1996. It says $2.3 million. That's how Artic Slope got the claim amount in a rush to file a claim as quickly as it could once the case was transferred to a different judge, no longer Judge Hanson, who was going to get a fresh look at all of these issues. Artic Slope acted promptly and diligently then. It did everything we would expect Artic Slope to do. There is a test we need to apply in this case. The test is this. There must be conscience, good faith, and reasonable diligence to call into action the powers of the court. That's from Holmberg. And in Maypoo, this court said, Judge Bryson writing for the court, we again reject the suggestion that equitable tolling is limited to a small and closed set of factual patterns. It's designed to be applied, as Holland tells us, at 2563 to relieve hardships, which from time to time arise from a hard and fast adherence to more absolute legal rules. If class action per se meant you couldn't have equitable tolling, your honors wouldn't have written the opinion that you wrote in ASNA 1, which said equitable tolling is something that can occur in the context of a class action. Your honors didn't know what the record would show. We didn't know what the record would show. That's been developed. Equitable tolling has been presented here. It's hard to believe of someone whipsawed worse than this plaintiff in a class action setting where the judge who's managing the case five times over 12 years tells that litigant, you're good to go, has a mirror image case, or I should say a carbon copy case, against the sister agency, same law, same underpayments, and relies on Judge Hanson's management of the case to protect them until the situation changes. Once it changed, the article abacted. Thank you, your honor. Thank you. Well, Mr. Shum, the case is submitted.